IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Reed Anthony Kevin Wright, | ) | Case No. 6:14-cv-04646-TMC-JDA |
| | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Plaintiff, | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| v. | ) | |
| | ) | |
| Rayena Sheppard-Oswald, Brian Oswald, | ) | |
| Heather Hubert, Sergeant Scott Matheny, | ) | |
| Officer M. Smoak, Officer Drew Pinciaro | ) | |
| | ) | |
| Defendants.[1] | ) | |
| _____ | ) | |

        This matter is before the Court on a motion to dismiss filed by Defendant Officer M.

Smoak.  [Doc. 96.]  Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d),

D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under

42 U.S.C. § 1983 and to submit findings and recommendations to the District Court.

        Plaintiff filed his Complaint on December 8, 2014. [Doc. 1.] On December 30, 2014,

Plaintiff filed an Amended Complaint [Doc. 5.], and on April 17, 2015, with leave of this

Court Plaintiff filed his Third Amended Complaint [Docs. 87, 91].[2]  On April 29, 2015,

Defendant M. Smoak ("Defendant Smoak") filed a motion to dismiss for failure to state a

--------------------------------------------------

        [1]Other defendants have been terminated in this case as Plaintiff amended his
Complaint or stipulated to their dismissal. [Docs. 5, 91, 104.] Additionally, On April 2,
2015, Defendants Jane Hemphill; the Greenville Rape Crisis Center, n/k/a the Julie
Valentine Center; Shauna Galloway, a/k/a Shauna Galloway-Williams; WYFF4 Greenville;
and Hearst Properties Inc. were terminated pursuant to an Order granting these
Defendants' motions to dismiss.  [Doc. 87.]

        [2]The Court notes that Plaintiff there is not a Second Amended Complaint included
on the docket.

claim.  [Doc. 96.]  On June 1, 2015, Plaintiff filed a response in opposition to the motion to dismiss, and Defendant Smoak filed a reply on June 11, 2015.  [Docs. 105, 106.]

## BACKGROUND[3]

Plaintiff and Defendant Rayena Sheppard-Oswald ("Shepard-Oswald") engaged in an affair that resulted in the birth of a male child while they were both married to other people .  [Doc. 91 ¶¶ 21–22.]  Plaintiff ended the relationship with Sheppard-Oswald but made every effort to bond with his son.  [*Id.* ¶¶ 23–24.]  Sheppard-Oswald reconciled with her husband, Defendant Brian Oswald ("Oswald"); however, Oswald resented Plaintiff for the affair and disrupted visitation between Plaintiff and his son.  [*Id.* ¶¶ 25–27.]  Oswald was arrested for threatening to kill Plaintiff.  [*Id.* ¶ 31.]  In retaliation, Sheppard-Oswald filed criminal domestic violence charges against Plaintiff, and Plaintiff was subsequently arrested and spent two nights in jail.  [*Id.* ¶¶ 32–35.]

Plaintiff filed for custody of his son in April 2008 as a result of Sheppard-Oswald withholding his son from him.  [*Id.* ¶ 36.]  The Guardian Ad Litem appointed to the case wrote several letters recommending that Plaintiff be granted standard visitation, which was granted starting January 23, 2010. [*Id.* ¶¶ 38, 41.]  However, when Plaintiff went to pick up his son as scheduled, Sheppard-Oswald refused to allow Plaintiff to take his son. [*Id.* ¶ 42.] Plaintiff contacted the Cayce Public Safety Department ("the Department") to intervene in the dispute; the officer disregarded the court order granting visitation and instructed Sheppard-Oswald to file a Trespass Notice against Plaintiff.  [*Id.* ¶ 43.]

---

[3]All facts included in this Background section are taken directly from Plaintiff's Third Amended Complaint.

On February 6, 2010, Shepard-Oswald attempted to prevent Plaintiff from taking his son, and two officers from the Department arrived to ensure the transfer took place. [*Id.* ¶¶ 44–45.] At that time, Oswald brought Plaintiff's son outside and told the police officer that Plaintiff had called him a "fat motherfucker" in front of Plaintiff's older son. [*Id.* ¶ 46.] On February 20, 2010, Plaintiff requested that officers from the Department accompany him to Shepard-Oswald and Oswald's home, and Plaintiff was arrested for Disorderly Conduct. [*Id.* ¶ 47.] Plaintiff was later found not guilty of that charge. [*Id.*]

On April 4, 2010, Plaintiff returned his son to Shepard-Oswald; the child was wearing a Clemson tank top and shorts. [*Id.* ¶ 53.] Oswald demanded the return of the clothing the child had been wearing when Plaintiff picked him up. [*Id.* ¶ 54.] Plaintiff's older son explained that they had left the clothes in Greenville and Oswald became enraged and began tearing the child's clothes off of him. [*Id.* ¶¶ 55–56.] Plaintiff filed a complaint with the Department about Oswald's behavior; however, the report was not filed properly and Oswald was not penalized for his behavior. [*Id.* ¶¶ 58–59.]

Plaintiff threw his son a birthday party during his scheduled visitation weekend on August 21, 2010. [*Id.* ¶ 61.] On September 3, 2010, Plaintiff received a phone call from Detective John Reese ("Detective Reese") of the Department informing him that criminal sexual misconduct and lewd act against a child charges had been filed against him. [*Id.* ¶ 62.] Detective Reese told Plaintiff that the child's statement had been coached. [*Id.* ¶ 63.]

Defendant Smoak contacted Defendant Officer Drew Pinciaro ("Officer Pinciaro") and advised him that the child had been abused when there was evidence to the contrary, and Defendant Smoak ignored the turbulent past between Plaintiff and Oswald and

3

Sheppard-Oswald in taking the complaint. [*Id.* ¶¶ 67–68.] Officer Pinciaro, Heather Hubert, and Sergeant Scott Matheny failed to conduct a proper investigation, knowingly used false information, and ignored information that disproved any probable cause in their investigation into the allegations against Plaintiff. [*Id.* ¶¶ 69–70.] Further, these same Defendants filed criminal sexual misconduct and lewd act against a child charges against Plaintiff while knowing that the child had been coached, that DSS had cleared Plaintiff of any lewd act, that there were conflicting statements by the child, that the child would not speak of lewd acts unless Shepard-Oswald was present, and that there were conflicting statements by Oswald and Shepard-Oswald. [*Id.* ¶ 71.] The charges against Plaintiff were dismissed on December 19, 2012. [*Id.* ¶ 80.]

Plaintiff requests actual damages in an amount to be determined by a jury, but in any event, an amount in excess of $75,000; punitive damages in an amount sufficient to punish all Defendants for their reckless, willful, and wanton acts, and to deter Defendants and others from committing similar acts, such amount to be determined by a jury, but in any event, an amount in excess of $75,000; and Plaintiff's attorney's fees. [*Id.* at 11–12.]

As stated, on April 29, 2015, Defendant Smoak filed a motion to dismiss for failure to state a claim. [Doc. 96.] On June 1, 2015, Plaintiff filed a response in opposition, and on June 11, 2015, Defendant Smoak filed a reply. [Docs. 105, 106.] Accordingly, Defendant Smoak's motion is ripe for review.

## **APPLICABLE LAW**

### **Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983

4

"'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.  To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments.  This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Motion to Dismiss Standard**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support her claim and entitle her to relief. When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, the court "need not

accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Further, for purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). If matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d).

With respect to well-pleaded allegations, the United States Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The plausibility standard reflects the threshold requirement of Rule 8(a)(2)—the pleader must plead sufficient facts to show he is entitled to relief, not merely facts consistent with the defendant's liability.  *Twombly*, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" (quoting *Twombly*, 550 U.S. at 557)).  Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible the plaintiff is entitled to relief.  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

## DISCUSSION

Defendant Smoak argues that she should be dismissed because Plaintiff has failed to state a cause of action against Defendant Smoak under 42 U.S.C. § 1983 or for malicious prosecution under South Carolina law and because Defendant Smoak is entitled to immunity.  [Doc. 96-1 at 6–10.]  Upon review, the Court disagrees.

**Section 1983 Claim**

Section 1983 actions premised on alleged malicious prosecution are analyzed as actions claiming unreasonable seizures in violation of the Fourth Amendment.  *See, e.g.*,

*Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000) ("[T]here is no such thing as a '§ 1983 malicious prosecution' claim.  What we termed a 'malicious prosecution' claim . . . is simply a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution—specifically, the requirement that the prior proceeding terminate favorably to the plaintiff.").  To state a claim for malicious prosecution under § 1983, "a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor."  *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) (citing *Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012)).

Here, Defendant Smoak argues that Plaintiff's Third Amended Complaint fails to allege that Defendant Smoak's actions caused Plaintiff's arrest or that subsequent acts of independent decision-makers were superceding events that broke the causal chain.  [Doc. 96-1 at 8–9.]  However, in his Third Amended Complaint, Plaintiff asserts that Defendant Smoak "aided the Greenville County Sheriff's Department['s] unconstitutional arrest of [Plaintiff and] violated [Plaintiff's] constitutional rights by omitting exculpatory evidence and committing false evidence."  [Doc. 91 ¶ 9.]  Plaintiff further asserts that "as a direct and proximate result of the false accusations, [Plaintiff] was deprived of his civil liberties against his will, and held without lawful justification or probable cause."  [*Id.* ¶ 80.]  Under the Rule 12(b)(6) standard of dismissal, the Court finds that these allegations are sufficient to state a causal connection between Defendant Smoak's actions and Plaintiff's arrest.[4]

---

[4]Defendant Smoak relies on *Evans*, 703 F.3d 636, for the proposition that subsequent acts of independent decision-makers can break the causal connection required to maintain a malicious prosecution claim under § 1983.  [Doc. 96-1 at 8.]  However, in *Evans*, the Fourth Circuit Court of Appeals found that the independent acts of the

**State Law Claim**

Under South Carolina law, "to maintain an action for malicious prosecution, a plaintiff must establish: (1) the institution or continuation of original judicial proceedings; (2) by or at the instance of the defendant; (3) termination of such proceedings in plaintiff's favor; (4) malice in instituting such proceedings; (5) lack of probable cause; and (6) resulting injury or damage." *Parrott v. Plowden Motor Co.*, 143 S.E.2d 607, 608 (S.C. 1965). "An action for malicious prosecution fails if the plaintiff cannot prove each of the required elements by a preponderance of the evidence, including malice and lack of probable cause." *Law v. S.C. Dep't of Corr.*, 629 S.E.2d 642, 648 (S.C. 2006), (citing *Parrott*, 143 S.E.2d at 609).

Here, Defendant Smoak contends that Plaintiff has failed to allege that the proceedings against him were instituted at the insistence of Defendant Smoak and that Defendant Smoak was involved in effectuating his arrest. [Doc. 96-1 at 10.] Moreover, even assuming that Plaintiff has alleged facts sufficient to allege that Defendant Smoak instituted Plaintiff's arrest, Defendant Smoak asserts that Plaintiff has not alleged malice. [*Id.*] The Court disagrees.

---

prosecutors pursuing the charges and the grand jury indictment sufficiently broke the chain of causation and entitled the police officers to dismissal of the malicious prosecution claim against them. 703 F.3d at 648. Here, Defendant Smoak asserts that the subsequent investigation of her fellow police officers broke the requisite causal chain. [Doc. 96-1 at 8–9.] However, *Evans* also states that "a police officer is not liable for a plaintiff's unlawful seizure following indictment in the absence of evidence that [the officer] misled or pressured the prosecution." 703 F.3d at 648 (internal quotation marks omitted). In this case, Plaintiff alleges that "Defendant Smoak contacted Pinciaro and advised him that child had been abused in spite of evidence to the contrary." [Doc. 91 ¶ 67.] Plaintiff further alleges that Defendant Smoak "aided the Greenville County Sheriff's Department['s] unconstitutional arrest of [Plaintiff and] violated [Plaintiff's] constitutional rights by omitting exculpatory evidence and committing false evidence." [*Id.* ¶ 9.] Thus, the Court finds the allegations in *Evans* are distinguishable from the facts as alleged in the present action.

With respect to Defendant Smoak's argument that Plaintiff has failed to allege that he was arrested at her insistence, in his Third Amended Complaint, Plaintiff asserts that Defendant Smoak advised another officer that Plaintiff's "child had been abused in spite of evidence to the contrary" and that "as a direct and proximate result of the reckless disregard for [Plaintiff's] innocence, [Plaintiff] was unlawfully prosecuted." [Doc. 91 ¶¶ 67, 81.] Plaintiff further states that "Defendants instituted and continued criminal actions against [Plaintiff and] maliciously pursued the criminal charge against Plaintiff in spite of evidence proving Plaintiff did not commit any unlawful act against his child." [*Id.* ¶ 117.] At this procedural posture, the Court finds that Plaintiff has provided sufficient facts to allege that Defendant Smoak instituted criminal proceedings against him.

The Court also finds that Plaintiff has sufficiently alleged that Defendant Smoak acted with malice in support of his claim of malicious prosecution. The Supreme Court of South Carolina has defined malice as "the deliberate intentional doing of an act without just cause or excuse." *Eaves v. Broad River Elec. Co-op, Inc.,* 289 S.E.2d 414, 415 (S.C. 1982). Moreover,

> "[m]alice does not necessarily mean a defendant acted out of spite, revenge, or with a malignant disposition, although such an attitude certainly may indicate malice. Malice also may proceed from an ill-regulated mind which is not sufficiently cautious before causing injury to another person. Moreover, malice may be implied where the evidence reveals a disregard of the consequences of an injurious act, without reference to any special injury that may be inflicted on another person. . . . In an action for malicious prosecution, malice may be inferred from a lack of probable cause to institute the prosecution."

*Law*, 629 S.E.2d at 649 (internal citation omitted).

Plaintiff has alleged that Defendant Smoak "omitt[ed] exculpatory evidence and committ[ed] false evidence." [Doc. 91 ¶ 9.] Plaintiff further alleges that "all [D]efendants recklessly conspired to unlawfully prosecute [Plaintiff]" and that "[a]s a direct and proximate result of the [D]efendant[s'] malicious prosecution of [Plaintiff], [Plaintiff] has been

damaged."[5]   [*Id.* ¶¶ 83, 118.]   These allegations are sufficient to allege malice, and

---

[5]Defendant Smoak also argues that she is entitled to immunity under South Carolina law.  The South Carolina code states,

> A physician, nurse, dentist, optometrist, medical examiner, or coroner, or an employee of a county medical examiner's or coroner's office, or any other medical, emergency medical services, mental health, or allied health professional, member of the clergy including a Christian Science Practitioner or religious healer, school teacher, counselor, principal, assistant principal, school attendance officer, social or public assistance worker, substance abuse treatment staff, or childcare worker in a childcare center or foster care facility, foster parent, **police or law enforcement officer**, juvenile justice worker, undertaker, funeral home director or employee of a funeral home, persons responsible for processing films, computer technician, judge, or a volunteer non-attorney guardian ad litem serving on behalf of the South Carolina Guardian Ad Litem Program or on behalf of Richland County CASA must report in accordance with this section when in the person's professional capacity the person has received information which gives the person reason to believe that a child has been or may be abused or neglected as defined in Section 63-7-20.

S.C. Code Ann. § 63-7-310(A) (emphasis added).  Section 63-7-390 states that

> A person required or permitted to report pursuant to Section 63-7-310 or who participates in an investigation or judicial proceedings resulting from the report, acting in good faith, is immune from civil and criminal liability which might otherwise result by reason of these actions. In all such civil or criminal proceedings, good faith is rebuttably presumed. Immunity under this section extends to full disclosure by the person of facts which gave the person reason to believe that the child's physical or mental health or welfare had been or might be adversely affected by abuse or neglect.

Here, Plaintiff has alleged that Defendant Smoak "conspired to deprive Plaintiff of his constitutional rights" and "recklessly conspired to unlawfully prosecute [Plaintiff]."  [Doc. 91 ¶¶ 82, 83.] Accordingly, the Court finds that Plaintiff has made an allegation that Defendant Smoak acted in bad faith in reporting the accusations against Plaintiff, and Defendant Smoak is not entitled to immunity at this procedural posture.

Defendant Smoak's motion to dismiss should be denied.

## **CONCLUSION**

Wherefore, based upon the foregoing, the Court recommends Defendant Smoak's motion to dismiss [Doc. 96] be DENIED.

IT IS SO RECOMMENDED.

S/Jacquelyn D. Austin
United States Magistrate Judge

October 16, 2015
Greenville, South Carolina